FILED
2021 Sep-23  PM 04:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **PAMELA EDMONSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 5:19-cv-01163-LCB** |
| | ) |
| **JAMES THOMPSON, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |
| | ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

This employment discrimination case is before the Court on Defendants' Motion for Summary Judgment. Plaintiff Pamela Edmonson's claims she suffered racial discrimination in violation of Title VII while employed by the Tennessee Valley Authority. (Doc. 17). Defendants' Motion has been fully briefed and is ripe for review. For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment.

### I.       Summary of the Facts

Edmonson, a Black female, started working for TVA in 1992. (Doc. 19 at 3). In 2013, Edmonson was employed as a Maintenance Specialist at the Browns Ferry Nuclear Plant in Athens, Alabama. *Id*. That year, Edmonson applied for two

positions TVA posted at Browns Ferry, but TVA didn't select her for either promotion. The selectees were white. *Id.* at 1.

### A.     The Selection Process

When positions become available at a TVA facility, TVA posts a vacant position announcement ("VPA") to solicit applications. (Doc. 18-16 at 191). Talent Management—essentially the Human Resources Department at TVA—reviews applicants' resumes to determine if they meet the VPA's stated minimum qualifications. *Id.* at 192.

If Talent Management deems a candidate qualified, they provide his or her resume and internal TVA files to the hiring manager for the next steps of the selection process. (Doc. 18-17 at 2). The hiring manager then conducts a three-step process to fill the position. First, the hiring manager conducts a records review of the applicant's resume and internal TVA files, and scores them in pre-determined categories. *Id.* at 3. The hiring manager assigns the categories relative weights. *Id.* Second, the hiring manager conducts interviews. The hiring manager creates a list of job-related questions asked to each candidate. *Id.* at 4. A panel of the hiring manager and other TVA managers with relevant knowledge about the vacant position score the applicant for each answer on a scale of one to five. (Doc. 18-16 at 230-31). Finally, the hiring manager assigns weight to the records review and the

interview portion and combines the weighted scores. TVA selects the applicant with the highest combined score for the position. (Doc. 18-17 at 5-9).

### B.    Outage Supervisor

In January of 2013, TVA posted VPA 32175 for the position of Outage Supervisor. (Doc. 18-3). The minimum qualifications for the position included: a minimum of eight years technical experience at a power plant; and the ability to communicate effectively, work effectively with a team, problem solve, and perform root cause analysis. Additionally, the minimum qualification statement included preferences for a college degree in an engineering field, an MBA, and prior supervisory experience. *Id.*

At the conclusion of the selection process, Edmonson had the fourth-highest number of total points. (Doc. 18-20). Stephanie Wilson scored the second-highest number of points. *Id.* Because TVA was filling two positions, they selected Wilson for the open position. (Doc. 18-17 at 7). In the selection process, Edmonson and Wilson earned the same score in the interview portion. (Doc. 18-20). However, while Wilson received 36 points in the records review, Edmonson received just 31 points. (Doc. 18-17 at 5-7). In four of five categories, Wilson and Edmonson received the same score. (Doc. 18-6). But in the Specialized Experience category, Wilson received 5 points because her resume listed experience as a training coordinator in the Navy. (Doc. 18-16 at 228-29); (Doc. 18-17 at 7). Edmonson received 0 points in

the Specialized Experience category because her resume showed no relevant experience as a trainer or a training coordinator. (Doc. 18-17 at 5).

Edmonson contends that she was more qualified than Wilson because Wilson was not minimally qualified for the position. Specifically, Edmonson argues that Wilson had no root cause experience, and that Wilson had a known reputation of unprofessional conduct. (Doc. 18-1 at 24-27). Edmonson also contends that she was more qualified because she had more experience at TVA. *Id.* at 24-25. Additionally, Edmonson argues that she should have scored more points in the Specialized Experience category. *Id.* at 28-30. She asserts that TVA included the category to give Wilson an advantage in the selection process. *Id.* at 30. Edmonson also avers that the interview portion was a pretext for discrimination because it was subjective, and she was the only black applicant before an all-white panel. *Id.* at 46-53.

### C.    C-Level Maintenance Specialist

In June of 2013, TVA posted VPA 32720 for the position of C-Level Maintenance Specialist. Minimum qualifications included a high school diploma, an associate's degree in a technical field, work management methods experience, and expert knowledge of plant components, systems, plant operations, and maintenance. (Doc. 18-5). Edmonson finished the selection process with the fourth-highest number of points. (Doc. 18-21). Jimmy Solley scored the highest number of points, so TVA selected him to fill the position. (Doc. 18-17 at 9-10); (Doc. 18-21). Solley

scored 29 points in the interview portion. (Doc. 18-21). Edmonson scored 27 points in the interview portion. *Id.* In records review, Solley and Edmonson received the same score in three of four categories. (Doc. 19 at 14). In the education category, Solley received 4 points because he had a technical degree. (Doc. 18-17 at 9). Edmonson received 2 points in the education category because she had completed some college course work but did not have a degree. *Id.* at 8.

Edmonson again contends she was more qualified than the selectee because she had more experience at TVA. (Doc. 18-1 at 67-68). Additionally, Edmonson argues she should have received more points in the education category of records review because Tomlinson should have considered her technical apprenticeship equivalent to an associate's degree. *Id.* at 71. Finally, Edmonson avers that the selection process was a pretext because the interview panel was entirely white and could have been more diverse. *Id.* at 81-82.

## II.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the Court of the basis

for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and—by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file—designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c), a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of

proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

### III.   Discussion

In any Title VII claim, the plaintiff "bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." *Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008) (internal quotation marks omitted). To do so, the plaintiff must present either "direct evidence of an intent to discriminate or circumstantial evidence using *McDonnell Douglas's* burden-shifting framework." *Id*. at 975. As explained by the *Crawford* court:

> Under [the *McDonnell Douglas*] framework, if the plaintiff establishes a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. If the employer does this, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination. The inquiry into pretext requires the court to determine, in view of all the evidence, "whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct."

*Id.* at 975-76 (citations omitted) (alteration supplied). The present record contains no direct evidence of racial animus by TVA. Thus, Edmonson proceeds under the *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), framework.

To establish a *prima facie* case of race-based failure to promote, a plaintiff must show that (1) she is a member of a protected class; (2) she applied for and was qualified to receive the promotion; (3) she was not promoted despite her qualifications; and (4) another equally qualified or less qualified individual, outside of plaintiff's protected class, was awarded the promotion. *Denney v. City of Albany*,

247 F.3d 1172, 1183 (11th Cir. 2001) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997)). TVA concedes that Edmonson has established a *prima facie* case under the *McDonnell Douglas* framework for both of her claims. (Doc. 19 at 17-18). However, TVA contends it promoted the selectees over Edmonson because they earned a greater number of points in the selection process than did Edmonson. Edmonson does not argue that TVA's reason for failing to promote her is not a legitimate, nondiscriminatory reason for the employment action.

Consequently, to survive summary judgment, Edmonson must show that TVA's proffered reason for promoting the selectees over her was pretextual. For the reasons below, Edmonson fails to carry this burden.

## A.     Pretext Analysis

As plaintiff, Edmonson bears the ultimate burden of persuading the Court that TVA's proffered reasons are pretextual. She must "meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. Edmonson may show that the reason is pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *cert. denied*, 546 U.S. 960 (2005) (quoting *Combs*, 106 F.3d at 1538). "[A] plaintiff's *prima facie* case,

combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148.

In evaluating the plaintiff's claim, the court should consider "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered". *Id.* at 148-149. But evidence that a proffered reason was baseless is insufficient by itself. "A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 402, 515 (1993)). That is, Edmonson's burden "is to show not just that [TVA]'s proffered reasons for [failing to promote] were ill founded but that unlawful discrimination was the true reason." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1267 (11th Cir. 2010) (citing *Reeves*, 530 U.S. at 148).

Edmonson's arguments are essentially that she was more qualified than the selectees. When arguing pretext by showing disparities in qualifications, "[a] plaintiff must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person,

in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks*, 446 F.3d at 1163 (quoting *Cooper*, 390 F.3d at 725).

　　　　　*1.　　Outage Supervisor*

Edmonson first argues that she was better qualified for the Outage Supervisor position because the selectee Wilson was not minimally qualified. This argument is two-fold. First, Edmonson contends that because the VPA listed communication and teamwork skills as minimum qualifications, and because Wilson had a history of unprofessional behavior at TVA, she was not minimally qualified. (Doc 22 at 14). At oral argument, Edmonson's counsel pointed to evidence showing that Tomlinson was aware that Wilson had been "abrasive" in the past. (Doc. 18-16 at 277-78). TVA supported its Motion by citing evidence that Talent Management, not the hiring manager, conducts the screening for minimum qualifications, so Tomlinson's knowledge of Wilson's past behavior was irrelevant. (Doc. 19 at 24). Further, TVA pointed to evidence that Tomlinson believed Wilson was a good communicator and had good teamwork skills. (Doc. 18-16 at 277-78).

Ultimately, Edmonson's argument fails to meet the pretext standard. Assuming arguendo that the evidence showed that Wilson was not a good communicator or able to work in a team, that alone is insufficient. Edmonson must show "that the reason is false *and* that unlawful discrimination is the true reason." *Brooks*, 446 F.3d at 1163. Edmonson's proffered evidence does neither. At best,

evidence that Wilson had been occasionally abrasive while working at TVA shows that the decision to promote Wilson to a supervisory position was a poor business decision. But this Court does not sit as a super personnel department. *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, at 1254-54 (11th Cir. 2000). Edmonson has failed to point the Court to any evidence showing TVA's motivation to promote Wilson over her was her race.

Second, Edmonson argues that Wilson was not minimally qualified because the VPA called for the ability to perform root cause analysis, but Wilson had no experience performing root cause analysis. (Doc. 22 at 14-15). In response, TVA cites evidence that Talent Management evaluates a resume for ability to perform root cause analysis, not specific experience at TVA performing root cause analysis. (Doc. 18-16 at 202-04). And Talent Management believed that Wilson had more than enough experience showing that ability. *Id.*

Again, ultimately, Edmonson's argument fails to meet the pretext standard. Assuming arguendo that Talent Management mistakenly found that Wilson had the ability to perform root cause analysis, showing that an employment decision was a mistake is alone insufficient. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004). Instead, Edmonson must produce evidence showing both that the proffered reason is false, and that discrimination was the true motive. Simply, Edmonson has not produced that evidence.

Further, Edmonson asserts that TVA "ignored" her own experience conducting root cause analysis. (Doc. 22 at 14-15). But ability to perform root cause analysis was a minimum qualification, and Edmonson advanced through the initial Talent Management screening. That is, because Edmonson advanced to the selection process, Talent Management necessarily found she had the ability to conduct root cause analysis. So, Edmonson's argument that TVA didn't consider her experience fails.

Next, Edmonson contends that she was generally more qualified than Wilson because she had "twice as much relevant technical experience, as well as training skills acknowledged by the selecting official which were commensurate to a Department Training Coordinator level position." (Doc. 22 at 15-16). This argument also fails.

First, this Court has found that experience is not equivalent to qualification for a promotion unless that experience is mandatory. *Mims v. TVA*, 2015 WL 6081200, at *7 (N.D. Ala. Sept. 23, 2015). Second, even if Edmonson shows she was more qualified, she must show that the disparity between her qualifications and Wilson's was so great that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Cooper*, 390 F.3d at 725. That great disparity is missing. Most importantly, Wilson and Edmonson scored the same in three of four categories in the records review.

Edmonson does not argue those scores were incorrect. If Wilson was so woefully less qualified, an objective records analysis would have revealed it. Further, the record generally does not demonstrate that no reasonable person could have selected Wilson over Edmonson. Rather, the evidence shows Wilson and Edmonson matched up closely, and TVA's matrix gave the edge to Wilson.

Last, Edmonson argues that she should have scored higher in the Specialized Experience category of the records review. Specifically, Edmonson contends that she should have received the same score as Wilson because she had training experience. (Doc. 22 at 15-16). TVA cites evidence that the records review is based solely on information in an applicant's resume. (Doc. 18-16 at 230). And Edmonson admits that her resume did not mention training experience or her experience as a training coordinator. (Doc 18-1 at 38, 39). On the other hand, Wilson's resume clearly showed that she had relevant training experience. (Doc. 18-16 at 229); (Doc. 18-17 at 6-7).

Edmonson's argument here is insufficient. Asking the Court to find that her score was too low is a paradigmatic example of quarreling with the selection process. *Chapman*, 229 F.3d at 1030. This argument is particularly weak when, as Edmonson admits, she failed to include her relevant experience on her resume. Further, Edmonson again fails to satisfy the *Cooper* standard. Even assuming Tomlinson scored Edmonson too low in this category, Edmonson has produced no evidence to

show that discrimination was the true motive. At most, Edmonson produced evidence that TVA made a mistake in the records review process without showing that TVA's true motive was discrimination.

In addition, Edmonson argues that Tomlinson knew she had the qualifications for a higher score in Specialized Experience because he promoted Edmonson to Training Coordinator shortly after selecting Wilson for Outage Supervisor. (Doc. 22 at 15-16). At oral argument, TVA's counsel pointed to evidence showing that the positions had different qualification requirements. Further, TVA's counsel cited evidence that Tomlinson did not believe that Edmonson had the experience to be Training Coordinator but promoted her because he felt she had the ability. (Doc. 18-16 at 325, 330).

This argument does little to move the ball forward for Edmonson. First, the fact that Edmonson was qualified for a different job with different requirements is not persuasive evidence that the selection process for Outage Supervisor was pretextual. In fact, because Tomlinson promoted Edmonson shortly after allegedly discriminating against her, he may receive a permissible inference that intentional discrimination was not his motivation. *See, e.g., Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998). That is, Tomlinson may be entitled to an inference that his failure to promote Edmonson was not intentional discrimination because he promoted her shortly after. But ultimately, Edmonson's argument again fails because

she does not meet the pretext standard. Even if the Court found Edmonson had the necessary experience to receive a higher Specialized Experience score, that would, at best, show a mistake on TVA's part. Edmonson has not shown that this mistake was pretextual.

Finally, Edmonson contends that Tomlinson included the Specialized Experience category in the records review to give Wilson an advantage. (Doc. 18-1 at 30). Particularly, Edmonson asserts that "they manipulate the data to read what they want to justify choosing who they want to." *Id.* TVA cites evidence showing that the hiring manager determines the records review categories before receiving or evaluating any resumes. (Doc. 18-17 at 3).

This argument is a textbook example that "a party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 248 (citations omitted). Here, Edmonson repeats her allegation that TVA adjusted its matrix with the intent to discriminate. But Edmonson produces no evidence and sets forth no specific facts showing there is a genuine issue for a factfinder to decide. Rather, Edmonson repeats her own subjective belief and rests on her allegation of discrimination without producing supporting evidence.

More broadly, Edmonson's arguments about TVA's selection process and the candidates' relative qualifications amount to an attempt to show that TVA's proffered reasons suffer from "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper* 390 F.3d at 725. She falls short. Her arguments do not reveal the obvious, structural, plainly false defects in the selection process that would lead a reasonable factfinder to find that the selection process was unworthy of credence. Instead, at best, Edmonson might be able to show that in two small parts of a much broader selection process, TVA made a mistake or a poor business decision. Further, as explained above, Edmonson fails to show both that TVA's proffered reason is false and that the true reason was intentional discrimination. Therefore, Edmonson has failed to show that TVA's selection process for the Outage Supervisor position was a pretext for intentional racial discrimination, and summary judgment for TVA is proper on this count.

### 2.   *C-Level Maintenance Specialist*

Edmonson attempts to show that the selection process for the C-Level Maintenance Specialist position was pretextual in two ways. First, Edmonson asserts that she should have scored higher in the education category of the records review because Tomlinson should have scored her technical apprenticeship as equivalent to

an associate's degree.[1] (Doc. 18-1 at 71). TVA cites evidence that the selectee had an associate's degree while Edmonson did not, and that the VPA called for a degree, not a degree or its equivalent. (Doc. 19 at 27).

This is another instance of Edmonson quarreling with the selection process. *Chapman*, 229 F.3d at 1030. Tomlinson pre-determined that an associate's degree would be worth more points than completion of some college coursework. And Edmonson did not have an associate's degree. (Doc. 19 at 27). So, Edmonson is asking this Court to substitute its own business judgement for TVA's. But even assuming Edmonson should have received four points instead of two because her education was the equivalent of an associate's degree, her argument still falls short of the *Cooper* standard. That is, at best, Edmonson might be able to show that TVA erred in scoring her too low in a small part of a larger selection process. She fails to provide any evidence that shows that intentional discrimination was TVA's true motivation.

Second, Edmonson contends that the selection process was pretextual because she was more qualified than the selectee. Her argument is two-fold. First, Edmonson asserts that she was more qualified because she had worked at TVA longer than the

---

[1] Edmonson additionally contends the process was a pretext because a white applicant, Van Carin, received credit for an associate's degree without having an associate's degree. (Doc. 22 at 16-17). But Van Carin's scores are irrelevant to this analysis because TVA did not select him for the position. (Doc. 18-21).

selectee. (Doc. 22 at 16). Second, Edmonson argues that she was more qualified because she trained the selectee in the past. *Id.* TVA insists that experience is not equivalent to qualification, and that Edmonson is not so much more qualified that she can show pretext. (Doc. 19 at 22-23).

To show pretext from qualifications disparity, Edmonson must show that the disparity is so great that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Cooper*, 390 F.3d at 725. She misses the mark. First, and most obviously, the record evidence shows that, at least in terms of TVA's stated requirements and qualifications, Edmonson is *less qualified*. The selectee had an associate's degree. Edmonson had completed some coursework but had not earned a degree. And it's undisputed that the position called for an applicant with an associate's degree. Additionally, as explained above, the fact that Edmonson had worked at TVA longer than the selectee does little to prove that she was more qualified for this promotion. Neither does the fact that Edmonson had trained the selectee in the past. This fact, alone, is another attempt to prove qualification through experience and seniority.

Ultimately, Edmonson bears the burden of showing that TVA's proffered reason is so fundamentally lacking that a reasonable factfinder would find it "unworthy of credence." *Cooper*, 390 F.3d at 725. She has not. Even accepting every argument made by Edmonson, at most she has shown either that TVA made scoring

mistakes in records review or that TVA made poor business decisions in pre-determining the matrix categories. Edmonson has not shown that the selection process was so obviously baseless that intentional racial discrimination was the true motive. Therefore, TVA is due summary judgment on this count.

### 3.   *Disparity in Education Scores*

Separate from the individual selection processes, Edmonson argues that her relative records review scores between the two positions show pretext. Specifically, Edmonson points to evidence that Tomlinson scored her differently in the education category of records review for the two positions despite applying with the same credentials. (Doc. 22 at 16). In response, TVA cites evidence that the positions were different in nature and had different educational requirements. (Doc. 26 at 5, 6).

Edmonson's argument is insufficient because, simply, the two positions were different. One was more supervisory in nature, while the other was more technical. It is unclear how receiving different scores in records review for two different positions with different requirements is evidence of pretext. Further, as explained above, Tomlinson later promoted Edmonson to a third position that had different requirements from the two positions at issue here. This, then, is another instance of Edmonson quarrelling with the selection process. *Chapman*, 229 F.3d at 1030. As explained at length above, more is required from Edmonson to show that these selection processes were a pretext for discrimination.

#### 4.     *Lack of Diversity on Interview Panels*

Last of all, Edmonson argues that the selection processes were generally biased because the interview panels for both positions were comprised entirely of white managers. (Doc. 18-1 at 46-53). Edmonson contends that TVA could have chosen a more diverse panel for the interviews. (Doc. 22 at 17). TVA cites evidence showing that the TVA policy requires that the hiring manager comprise the interview panel of managers that have position-specific knowledge. (Doc. 19 at 28). In this case, the relevant managers were white. *Id.* TVA further points out that Edmonson concedes that her contention that the all-white panels discriminated is unsupported by other evidence and is her personal belief. (Doc. 18-1 at 50).

This contention fails for three reasons. First, this is the kind of allegation unsupported by evidence that cannot defeat summary judgment. *Anderson*, 477 U.S. at 248. Second, this is another instance where Edmonson is quarreling with the selection process and asking the Court to substitute its own business judgment. *Cooper*, 390 F.3d at 725. Third, Edmonson again fails to show that discrimination was TVA's true motivation. Even if the Court finds that the interview panels could or should have been more diverse, Edmonson does not offer any supporting facts or evidence that show that TVA harbored discriminatory intent.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment

(Doc. 17) is **GRANTED**. Plaintiff's claims are hereby **DISMISSED WITH**

**PREJUDICE**. A separate order will be entered contemporaneously with this

memorandum opinion.

**DONE** and **ORDERED** this September 23, 2021.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE